# Webb *v.* Ballard.

*Petition by Derivative Purchaser, for Order of Conveyance of
Title to Lands sold under Probate Decree.*

1. *Sale of lands under probate decree; order for conveyance to sub-
purchaser.*—When lands have been sold under a probate decree on the
petition of an administrator, the sale reported and confirmed, the
purchase-money paid, and an order made for the conveyance of title
to the purchaser, but no conveyance has been executed, the court can
not afterwards order the execution of a conveyance to a sub-purchaser
(Code, § 2124), against the objection of the original purchaser, who
pleads the statute of frauds, and shows that he has never transferred
his interest in the land except by a verbal contract of exchange.

APPEAL from the Probate Court of Randolph.
Heard before the Hon. T. J. THOMASON.
Petition by Joshua Ballard for an order of court requiring D.
A. Perryman, as administrator of the estate of Jacob Presnell,
deceased, to execute to him a conveyance of title to a tract of
land, which said administrator had sold under an order of the
court. M. A. Webb, who was reported as the purchaser at the
sale, and the administrator, were made defendants to the peti-
tion. The petitioner claimed to be a derivative purchaser from
said Webb, alleging that Webb had transferred his interest in
the land to John S. Veal, who transferred it to T. B. Veal, who
sold and conveyed to him, the petitioner. The petition was
contested by Webb, who alleged in his answer "that he never
has at any time conveyed or transferred to any one the right
which he acquired by the purchase of said land;" and further
pleaded, "that the alleged transfer of his interest to John Veal
is void, because the purchase-money was not paid, nor any
portion thereof, and the purchaser put in possession of said
land, and the alleged trade of said lands was not in writing
subscribed by the vendor." On the evidence adduced, the
court granted the prayer of the petition, and ordered the ad-
ministrator to execute a conveyance to said Ballard; and this
decree is here assigned as error by Webb.

WM. H. SMITH, and J. W. OLIVER, for appellants.

JAMES AIKEN, *contra.*

STONE, C. J.—Perryman was administrator of Jacob Presnell, deceased, and, under an order of the Probate Court, he, in January, 1880, sold the land in controversy—120 acres—and Milton Webb became the purchaser, and received a certerficate of purchase. The sale was partly on time. On July 9, 1889, Perryman reported the sale to the Probate Court, and reported that the purchase-money had been paid. On July 25, 1889, the Probate Court confirmed the sale, and "authorized, empowered and required" the administrator to execute and deliver title to the purchaser, the report showing that Milton Webb was the purchaser of the land in controversy. It is not shown that any title was made to Webb.

On August 12, 1889, Joshua Ballard filed his petition in said Probate Court, claiming that he held said lands derivatively under said Webb, and praying that said lands be decreed to him, and a conveyance executed by the administrator to him. Milton Webb and Perryman, the administrator, were made parties defendant to Ballard's petition, and they were brought in by notice served. Webb pleaded various pleas in defense, and among others, that his interest in said purchased lands had never been conveyed or transferred by any writing signed by him, or by his authority.

On the trial, the following facts were developed: At the sale, the lands were bid off by Webb, and he was set down as the purchaser. The lands were then uncleared. They were never cleared or occupied by Webb. Some time after his purchase, Webb made an agreement with one Veal, to exchange said lands for another tract, paying a money difference, and received from Veal a conveyance of the land thus received in exchange. Webb took possession of the lands he had thus obtained from Veal, and has remained in possession ever since. He has, however, expended a large sum of money in defending his title and possession, but he has defended them successfully. He made no written transfer or conveyance to Veal of the land he had purchased at administrator's sale, but the regularity and sufficiency of the conveyances from Veal down to Ballard are not questioned. Veal, while he claimed to own the land, cleared and cultivated a small part of it; and Ballard, after he claims to have acquired it, made much more extensive improvements, and has occupied it ever since under claim of right. On a hearing of Ballard's petition, the Probate Court, on August 26, 1889, decreed that the administrator should make title to Ballard. From that decree the present appeal is prosecuted.

In defense of the ruling of the Probate Court, it is claimed that Ballard holds derivatively under Webb; and the purchase-

[Truss v. Davidson.]

money having been paid in full, and the sale confirmed, the Probate Court did not err in decreeing title to be made to him, Ballard.    This contention is based on section 2124 of the Code of 1886.—Sess. Acts 1880–1, p. 29; 1884–5, p. 95.    This remedy is purely statutory (*Anderson v. Bradley*, 66 Ala. 263), and is administered by a court of limited, statutory powers, with no equitable jurisdiction.

It may be that Ballard is equitably entitled to the land. But no oral exchange of lands, without written evidence, is clearly within the statute of frauds.—Browne on Stat. Frauds, §§ 76 to 78, inclusive.    We can not think Ballard showed himself to be such derivative holder under Webb, as to be entitled to the statutory relief claimed.    The Probate Court erred in the relief granted.

In Pennsylvania there is no separate Chancery Court, and no tribunal authorized to administer separate equitable relief. Rulings of that State are shaded by the peculiar, blended system which prevails there.—*Reynolds v. Hewett*, 27 Penn. St. 176; *Moss v. Culver*, *Ib.* 414.

There is, perhaps, another fatal objection to the relief granted in this case.    Before Ballard's petition was filed, the court had made an order that the administrator should execute a conveyance to Webb.    That order, so far as we are informed, stood, and yet stands, in full force, unreversed and unrevoked. Was it permissible to make the second order while the first was in force?    Did not the existence of the first order cut off all jurisdiction to grant another that was absolutely repugnant to it?

The decree of the Probate Court is reversed, and a decree here rendered dismissing Ballard's petition at his costs.

Reversed and rendered.